UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **KERRY BARRETT, ET AL** | **CASE NO. 1:20-CV-01346** |
| VERSUS | JUDGE DAVID C. JOSEPH |
| DRESSER, LLC, ET AL | MAGISTRATE JUDGE PEREZ-MONTES |
| | |
| **JACOB BARNES, ET AL** | **CASE NO. 1:21-CV-00024** |
| VERSUS | JUDGE DAVID C. JOSEPH |
| DRESSER, LLC, ET AL | MAGISTRATE JUDGE PEREZ-MONTES |
| | |
| **ROBERT COOK, ET AL** | **CASE NO. 1:21-CV-00696** |
| VERSUS | JUDGE DAVID C. JOSEPH |
| DRESSER, LLC, ET AL | MAGISTRATE JUDGE PEREZ-MONTES |
| | |
| **BETSY E. PETTY, ET AL** | **CASE NO. 1:21-CV-02586** |
| VERSUS | JUDGE DAVID C. JOSEPH |
| DRESSER, LLC, ET AL | MAGISTRATE JUDGE PEREZ-MONTES |
| | |
| **MICHELLE BARTON, ET AL** | **CASE NO. 1:22-CV-00263** |
| VERSUS | JUDGE DAVID C. JOSEPH |
| DRESSER, LLC, ET AL | MAGISTRATE JUDGE PEREZ-MONTES |

**MEMORANDUM RULING GRANTING
MOTION FOR ENTRY OF *LONE PINE* ORDER**

Before the Court are five substantively identical MOTIONS FOR ENTRY OF *LONE PINE* ORDER (the "Motions") filed by Defendants Dresser, LLC, Dresser RE, LLC, Baker Hughes Company, Baker Hughes Holdings, LLC, and Baker Hughes Energy Services, LLC (collectively, "Dresser") in the following cases: (i) *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM [Doc. 113]; (ii) *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM [Doc. 105]; (iii) *Cook v. Dresser, LLC*, No. 1:21-cv-00696-DCJ-JPM [Doc. 57]; (iv) *Barrett v. Dresser, LLC*, No. 1:20-cv-01346-DCJ-JPM [Doc. 84]; and (v) *Petty v. Dresser, LLC*, No. 1:21-cv-02586-DCJ-JPM [Doc. 41] (hereinafter referred to

collectively as the "Related Cases").[1]  In each motion, Dresser seeks the entry of a *Lone Pine* order to expeditiously identify those claims for personal injury damages lacking evidentiary support.  The *Barnes*, *Barton*, and *Cook* Plaintiffs filed opposition briefs [*Barnes* Doc. 119], [*Barton* Doc. 115], and [*Cook* Doc. 62], and the Defendants filed reply briefs in all cases [*Barnes* Doc. 120], [*Barrett* Doc. 89], [*Barton* Doc. 116], [*Cook* Doc. 63], and [*Petty* Doc. 46].  After careful consideration, and for the reasons set forth below, the Motions are GRANTED.

## BACKGROUND

These Related Cases[2] arise from the operations of a now-closed pipe valve manufacturing facility located in Rapides Parish, Louisiana (the "Dresser Facility"). Plaintiffs in the Related Cases claim that the Facility improperly disposed of solvents, cutting oils, acids, and caustics, thereby contaminating the groundwater and soil in the surrounding area.  [*Barnes* Doc. 47]; [*Barton* Doc. 101]; [*Barrett* Doc. 1]; [*Cook* Doc. 1]; [*Petty* Doc. 13].  Hundreds of plaintiffs filed lawsuits alleging personal injury and property damage claims against Dresser and other defendants in state and federal courts, alleging that this contamination migrated onto their nearby properties, causing both property damage and either present or potential future personal injury resulting from their exposure to toxins.  *Id.*

---

[1]   The case of *D&J Investments of CENLA, LLC v. Baker Hughes, a GE Co., LLC*, No. 1:23-cv-00508-DCJ-JPM (W.D. La. Apr. 18, 2023) also remains pending in this Court. However, that matter is stayed in consideration of a Motion to Remand [Doc. 17] filed by the Plaintiffs in that case, which is currently pending before the Magistrate Judge.  Defendants have likewise filed a MOTION FOR ENTRY OF *LONE PINE* ORDER in the *D&J* matter [Doc. 27].

On October 1, 2021, the Magistrate Judge issued a Coordinated Discovery Order [*Barnes* Doc. 41], [*Barrett* Doc. 66], and [*Cook* Doc. 36], in some of the Related Cases, pursuant to which the Plaintiffs were ordered to produce "Plaintiff Information Sheets," identifying the specific properties at issue and the personal injuries allegedly caused by the Defendants. In the instant Motions, Defendants claim – despite the Court's order – that: (i) they have not received a Plaintiff Information Sheet for each Plaintiff in the Related Cases, and (ii) for the ones they did receive, nearly every residential property owner asserts a personal injury claim without regard to, (a) their proximity to the affected groundwater; (b) the concentrations of TCE and/or PCE detected or not detected in their homes; (c) their length of time in the allegedly impacted residence; or (d) the nature of their alleged ailment. Defendants further argue that most, if not all, of the Plaintiffs are unable to show sufficient exposure and causation to support a personal injury claim.

On September 15, 2023, the Court consolidated the Related Cases pursuant to Rule 42 for the limited purpose of determining common issues of fact. [*Barrett* Doc. 88]; [*Barnes* Doc. 117]; [*Cook* Doc. 61]; [*Petty* Doc. 45]; [*Barton* Doc. 113]. A consolidated Phase I trial of these common issues is set for May 13, 2024. Among the common issues that will be tried during Phase I is the cause of the toxic plume and the allocation of responsibility among the defendants. A deadline of February 13, 2024, has been set for the completion of all discovery.

A "*Lone Pine*" order, which derives its name from *Lore v. Lone Pine Corp.,* No. L–33606–85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986), is a discovery tool designed to address the complex issues and potential burdens on defendants and

courts in mass tort litigation by requiring plaintiffs to meet an evidentiary threshold before being permitted to further pursue their claims. *See Acuna v. Brown & Root Inc.,* 200 F.3d 335, 340 (5th Cir. 2000) (discussing use of *Lone Pine* orders in mass tort litigation). Rule 16(c)(2) affords district courts wide discretion to manage discovery in civil actions, and *Lone Pine* orders are typically issued under Rule 16(c)(2)(L), which permits district courts to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . ." *Id.* "The basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases." *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008), *aff'd,* 388 F. App'x 391 (5th Cir. 2010), *citing Baker v. Chevron USA, Inc.,* 2007 WL 315346, *1 (S.D. Ohio Jan.30, 2007).

District courts in the Fifth Circuit routinely enter *Lone Pine* orders in mass tort cases to facilitate case management and provide structure to the discovery process. *See, e.g., In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL No. 2592, 2021 WL 493069, at *1 (E.D. La. Feb. 10, 2021) (requiring plaintiffs to provide a fact sheet and related documents followed by "a case-specific [expert] report from a licensed physician" along with medical records and an affidavit of compliance signed by the plaintiff); *In re 1994 Exxon Chem. Plant Fire Litig.*, Master Docket No. 94-MS-3-C-1, 2005 WL 6252291, at *1 (M.D. La. April 29, 2005) (requiring "that each plaintiff produce an affidavit from a qualified treating or other physician, and an affidavit from a qualified real estate appraiser or other real estate expert."); *see also In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20,*

*2010*, MDL No. 2179, 2016 WL 614690, at *5 (E.D. La. Feb. 16, 2016) (requiring each plaintiff to provide descriptions of their alleged ailments, the date, time, and locations of exposure, and other information relevant to confirm the plaintiff's exposure and general causation); Case Management Order No. 1 (Dkt. #36), *Abner v. Hercules, Inc.*, No. 2:14-cv-00063 (S.D. Miss. Nov. 10, 2014) (requiring each plaintiff in a property contamination case to provide affidavits showing that constituents were present on their property and that there was a likely migration pathway to their property from the defendant's facility); Order (Dkt. #3387), *In re Complaint of AET Inc. Ltd.*, No. 1:10-cv-00051 (E.D. Tex. March 22, 2011) (requiring each plaintiff in a personal injury and property damage case to produce affidavits showing dates of treatment, names of medical providers, causation, specific properties, a detailed description of the damage, the identity of the constituents that caused the damage, and the amount in damages suffered by the plaintiff).

In *Steering Comm. v. Exxon Mobil Corp.*, a case involving smoke exposure from a chemical plant fire, the Fifth Circuit approved the district court's order requiring that each plaintiff produce, pursuant to a *Lone Pine* order, either an affidavit from a qualified treating or other physician, or an affidavit from a qualified real estate appraiser or other real estate expert, depending on the type of injury alleged. 461 F.3d 598, 604 & n.2 (5th Cir. 2006). As is the case here, the district court in *Exxon Mobil* had previously denied the plaintiffs' motion to certify a class action, noting that the *Lone Pine* order served as a useful tool in cases where class certification is inappropriate, but discovery is nevertheless complex. *Exxon Mobil Corp.*, 461 F.3d at 605.

Here, the parties disagree about both the utility and the timing of the entry of a *Lone Pine* order at this stage in the litigation. While acknowledging that *Lone Pine* orders can assist the Court and parties in certain mass toxic tort cases, Plaintiffs oppose the instant motions on grounds that a *Lone Pine* order is an extraordinary remedy that is not appropriate at this juncture. Plaintiffs argue that they should not be required to submit *prima facie* evidence of their personal injury claims prior to the completion of discovery and the resolution of common issues at the Phase I jury trial on May 13, 2024. They also contend that entry of a *Lone Pine* order would be tantamount to an improper substitute for summary judgment.

Defendants, on the other hand, contend that some of the Related Cases have been pending for more than three years, and that the discovery sought in the *Lone Pine* order regarding medical causation is information the Plaintiffs should have had at the time they filed their lawsuits. To counter the Plaintiffs' argument that causation simply cannot be determined at this time, Defendants cite to the sworn Declaration of Dr. Christopher Teaf, a toxicologist, who testified that sufficient information exists to perform a causation analysis, specifically:

> Extensive sampling efforts of defendant's property, as well as the surrounding areas, have been ongoing since at least 2012. Those samples have been taken from surface water, groundwater, soil vapor, soil, indoor air and ambient air. In this case, those sample – or samples like them that could be obtained by Plaintiffs – are sufficient to perform a toxicological health risk assessment and determine the likelihood of disease causation to a reasonable degree of scientific certainty.[3]

---

[3]   *See* Declaration of Christopher Teaf, Ph.D, attached as Exhibit 5 to Defendants' Reply brief. [*Barnes* Doc. 120-5, ¶17].

Furthermore, Defendants argue that Dresser has investigated the impacts of chlorinated solvent to groundwater, which has resulted in thousands of air, soil, and water samples over a vast geographic area, at considerable expense, and that this data can be used – and should have already been used – to assess causation with respect to each Plaintiff.  In short, Defendants argue that Plaintiffs have delayed the process of conducting a causation analysis for each individual Plaintiff because of the costs associated with such an undertaking.  They further argue that the filing of so many lawsuits without a threshold level of evidence is sanctionable.

*Lone Pine* orders have been found to be particularly useful, as Plaintiffs themselves point out, where there is some articulable suspicion or skepticism concerning the evidentiary support for certain of plaintiffs' claims.  In fact, a central element supporting the original discovery order issued in the *Lone Pine* case was an EPA report casting serious doubt on the pollution alleged against those defendants. *Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 84 (M.D. Pa. 2015), *citing Lone Pine,* 1986 WL 637507 at *1.  Subsequent courts considering *Lone Pine* orders have considered the defendant's ability to produce evidence demonstrating the plaintiff's claims as dubious. *See, e.g., McManaway,* 265 F.R.D. at 389 ("A *Lone Pine* order should issue only ... after the defendant has made a showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information.").  While the Court makes no finding at this time with respect to the viability of any of the Plaintiffs' personal injury claims in the Related Cases, the Court notes that Defendants' expert Dr.

Christopher Teaf has concluded that there is no general causal link between TCE and/or PCE exposure and the vast majority of the Plaintiffs' alleged conditions.[4]

The Court also takes into consideration the evidence and expert testimony admitted during its Rule 65 hearing in the related matter of *Hyatt v. Dresser, LLC*, No. 1:20-cv-01460-DCJ-JPM. There, on February 23-24, 2022, this Court conducted an evidentiary hearing on the Plaintiffs' Motion for Preliminary Injunction [Doc. 1]. After two days of testimony,[5] the Court denied the Plaintiffs' Motion for Preliminary Injunction, specifically finding that the Plaintiffs failed to meet their burden of demonstrating a measurable risk to their health given the low levels of PCE and TCE that were found in the air in their home.[6] The Court further found that, despite those plaintiffs credibly testifying that they were concerned about exposure to chemicals from the Dresser facility, they had not been diagnosed with any medical condition linked to TCE and/or PCE exposure. Further, the *Hyatt* plaintiffs had taken no actions – such as consulting their physicians, requesting an air filter from Dresser, or attempting to sell their home or otherwise physically relocate – that were consistent with their claims that they had developed genuine and serious mental

---

[4] *See* Declaration of Christopher Teaf, Ph.D, attached as Exhibit 5 to Defendants' Reply brief. [*Barnes* Doc. 120-5, ¶17].

[5] In addition to the plaintiffs, the Court heard evidence from Carey Dicharry, a geologist supervisor with the Louisiana Department of Environmental Quality; Margo Moss, an environmental scientist; Dr. Stephen King, a toxicologist trained in the fields of epidemiology and environmental science; and John Ellis, an environmental investigator.

[6] *See Hyatt, et al v. Dresser, LLC*, No. 1:20-cv-01460, Minutes of Court [Docs. 78 & 79] and the Official Transcripts of Hearing [Docs. 85 & 86].

distress resulting from their alleged exposure to these chemicals.[7] Thus, this Court has already determined that at least two plaintiffs allegedly exposed to PCE and TCE were unable to show a causal connection between their alleged physical and mental symptoms and the presence of PCE and TCE allegedly caused by the contaminant dispersion at issue.

Considering the foregoing, and after careful consideration of the arguments of the parties, the applicable law, and the current posture of the litigation in the Related Cases, the Court finds that entry of a *Lone Pine* order is appropriate in the Related Cases pertaining to the Plaintiffs' claims for personal injury. The Related Cases involve 259 plaintiffs[8] bringing complex toxic tort cases against multiple defendants. The pleadings offer little, if any, specific causation theories or claims describing the impact of the contaminants at issue on each individual Plaintiff. The Court finds that Plaintiffs are now in possession of sufficient discovery and information regarding the nature, geographical extent, and chemical constituents of the toxic plume to comply with a *Lone Pine* order. Each plaintiff should have at least some information regarding the nature of his or her alleged injuries, the circumstances under which he or she could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for those alleged injuries. *See Acuna*, 200 F.3d at 340, *citing Beanal v. Freeport–McMoran, Inc.,* 197 F.3d 161, 165 (5th Cir.

---

[7] *Id.*

[8] This number does not include the 86 plaintiffs in the *D&J* matter, which, if not remanded, will be consolidated with the Related Cases and, absent a contrary showing, also be subject to a substantially similar *Lone Pine* order.

Page **9** of **11**

1999) (plaintiff's complaint is insufficient where it is devoid of "names, dates, locations, times, or any facts that would put [defendant] on notice as to what conduct supports ... his claims"). The Court further finds that entry of a *Lone Pine* Order will simplify the Related Cases, streamline costs to both the Plaintiffs and the Defendants, conserve judicial resources, and aid the Court in preparing for both the Phase I trial as well as further proceedings in each of the Related Cases.

For the foregoing reasons, and in an effort to expedite discovery, conserve judicial resources, and facilitate the administration of these Related Cases,

IT IS HEREBY ORDERED that the MOTIONS FOR ENTRY OF *LONE PINE* ORDER filed by Defendants in *Barnes v. Dresser, LLC*, No. 1:21-cv-00024-DCJ-JPM [Doc. 113]; *Barton v. Dresser, LLC*, No. 1:22-cv-00263-DCJ-JPM [Doc. 105]; *Cook v. Dresser, LLC*, No. 1:21-cv-00696-DCJ-JPM [Doc. 57]; *Barrett v. Dresser, LLC*, No. 1:20-cv-01346-DCJ-JPM [Doc. 84]; and *Petty v. Dresser, LLC*, No. 1:21-cv-02586-DCJ-JPM [Doc. 41] are GRANTED.

IT IS FURTHER ORDERED that, **on or before November 17, 2023**, any Plaintiff in the Related Cases who has not done so shall produce to Defendants a completed Plaintiff Information Sheet.

IT IS FURTHER ORDERED that, **on or before February 9, 2024**, each Plaintiff claiming <u>a personal injury sustained as a result of exposure to trichloroethylene (TCE) or tetrachloroethylene (PCE), either to himself or herself, or on behalf of a minor or decedent</u>, must serve on the Defendants a sworn affidavit from

**a licensed physician or other qualified expert**, or both, as may be necessary, which sets forth the following for each claimant:

(a) A list of all specific injuries, illnesses, or conditions that the claimant suffered as a result of the alleged exposure to trichloroethylene (TCE) or tetrachloroethylene (PCE);

(b) The date(s) on which each such injury, illness, or condition was first suffered by the claimant and the date(s) on which a physician or other health care professional examined or treated the claimant for the injury, illness, or condition allegedly caused by exposure to trichloroethylene (TCE) or tetrachloroethylene (PCE);

(c) An explanation of the manner of exposure (i.e., ingestion, inhalation, dermal contact, etc.), the dates of exposure, and the duration of exposure;

(d) The name and address of each physician or other medical care provider who treated the claimant, a summary of the treatment provided, and any diagnosis;

(e) An opinion, based on a reasonable degree of medical or scientific probability, that the claimed injury, illness, or medical condition was caused by the exposure to trichloroethylene (TCE) or tetrachloroethylene (PCE); and

(f) A descriptive narrative and list of source materials, if any, providing the scientific and medical basis for any expert's opinion that the claimed injury, illness, or medical condition may be caused by exposure to trichloroethylene (TCE) or tetrachloroethylene (PCE).

THUS, DONE AND SIGNED in Chambers on this 10th day of October 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE